**REUNION HOTEL/TOWER JOINT VENTURE, Appellant**

v.

**DALLAS AREA RAPID TRANSIT and Neosho Construction Company, Inc., Appellees.**

No. 05–06–00484–CV.

Court of Appeals of Texas, Dallas.

April 16, 2008.

---

1. In light of this Court's disposition of Smith's first issue, we do not address her remaining two issues.

Larry L. Gollaher, Law Offices of Larry L. Gollaher, Irving, James Edward Turner, Dallas, TX, for Appellant.

Swanson Woodson Angle, Hyattye O. Simmons, Derek A. Cargill, James D. Stanton, Law Offices of James D. Stanton, L.P., Dallas, TX, for Appellee.

Before Justices WHITTINGTON, BRIDGES, and LANG.

## OPINION

Opinion By Justice BRIDGES.

Reunion Hotel/Tower Joint Venture (Reunion) appeals the trial court's judgment that it take nothing on its claims against Dallas Area Rapid Transit (DART) and NEOSHO Construction Company. In three issues, Reunion argues the trial court erred in failing to enter judgment in favor of Reunion, there is no evidence to show Reunion's negligence proximately caused the underlying property damage, and the trial court erred in granting summary judgment to DART and NEOSHO

on Reunion's inverse condemnation claims. We affirm the trial court's judgment.

Reunion owned and operated the Hyatt–Regency Hotel and Reunion Tower in Dallas. Dallas Area Rapid Transit (DART), through its independent contractor NEOSHO, undertook a public works project to build a light rail station at Union Station on land adjacent to the Hyatt–Regency. As part of the project, DART wanted to close a pedestrian tunnel connecting Union Station to the Hyatt–Regency, but Reunion had a long-term lease with the City of Dallas for use of Union Station and the tunnel. Neither DART nor NEOSHO could close the tunnel without the express approval of Reunion. As construction proceeded, Hyatt–Regency's chief engineer complained that rainwater was leaking into the tunnel, and NEOSHO installed some electric pumps to pump water out before it got to the tunnel.

On March 12, 1995, a rainstorm resulted in flooding of the tunnel and escalators inside the Hyatt–Regency. Reunion asserted claims against DART and NEOSHO involving the Texas Tort Claims Act, inverse condemnation, diversion of the natural flow of surface water under the Texas Water Code, the transportation code, and common law negligence. The trial court granted DART and NEOSHO's joint motion for summary judgment on Reunion's inverse condemnation, water and transportation code, and water diversion claims. Subsequently, the trial court granted DART's second motion for summary judgment on Reunion's negligence claims. By Rule 11 agreement, DART was removed from the style of the case. Thus, only Reunion's negligence claim against NEOSHO went to trial.

■ A jury found that the negligence of both Reunion and NEOSHO caused the property damage, with sixty-five percent of the damage attributable to NEOSHO

and thirty-five percent attributable to Reunion, and the total damage was $56,343.68. The jury also found that the property damage did not arise, in whole or in part, from "the issue of the operation of a sump pump." Both Reunion and NEOSHO moved for judgment on the verdict, and the trial court granted NEOSHO's motion based on the jury's finding that the property damage did not arise from the operation of a sump pump. This appeal followed.

■ In its first issue, Reunion argues the trial court erred in failing to grant Reunion judgment against NEOSHO. Specifically, Reunion argues the jury's finding that the property damage did not arise from the operation of a sump pump is irrelevant because NEOSHO is not entitled to sovereign immunity and Reunion's property was damaged for public use without adequate compensation. The Texas Tort Claims Act provides a limited waiver of governmental immunity if certain conditions are met. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex.2004). A governmental unit is liable for property damage proximately caused by the negligence of an employee acting within his scope of employment if the property damage arises from the operation or use of a motor-driven vehicle or motor-driven equipment. Tex. Civ. Prac. & Rem.Code Ann. § 101.021(1) (Vernon 2005). The transportation code provides that an independent contractor performing work for a transit authority is liable for damages only to the extent that the authority would be liable if the authority itself were performing the function. Tex. Transp. Code Ann. § 452.056(d) (Vernon 2007).

Citing section 452.001(9), Reunion argues the applicable definition of "public transportation" is "the conveyance of passengers and hand carried packages or baggage of a passenger by any means of

transportation." TEX. TRANSP. CODE ANN. § 452.001(9) (Vernon 2007). Relying on this definition, Reunion asserts that immunity under the transportation code for a private contractor is limited to it being a private operator of transportation services and has nothing to do with how the contractor performs a construction contract or how well it keeps water from flowing down a City of Dallas tunnel onto private property. Because the transportation of passengers is not at issue in this case, Reunion argues, NEOSHO is not protected by the Texas Tort Claims Act.

Section 452.056 of the transportation code declares that a transportation authority may acquire, construct, develop, plan, own, operate, and maintain a public transportation system in the territory of the authority. TEX. TRANSP. CODE ANN. § 452.056 (Vernon 2007). As Reunion concedes in its brief, there is no Texas authority limiting a transportation authority's private contractor's immunity to transportation services. On the contrary, a contractor performing construction work for DART is liable for damages only to the extent that DART would be liable if it performed the work itself. TEX.REV.CIV. STAT. ANN. art. 6550d (Vernon Supp.2007) (if independent contractor of public transportation entity is performing function of entity, contractor liable for damages only to extent entity would be liable if entity itself were performing function). Here, the jury found that the property damage did not arise from the use of a motor-driven sump pump. Thus, DART would not have been liable for the property damage and, therefore, neither is NEOSHO. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1) (Vernon 2005).

■ In the alternative, Reunion argues that sovereign immunity plays no part in limiting its constitutional right under article I, section 17 of the Texas Constitution, which provides for compensation for the taking or damaging of property for public use. Reunion appears to reason that, if NEOSHO is entitled to derivative sovereign immunity, NEOSHO should also be in the same position as DART when it comes to Reunion's claims for inverse condemnation. Article I, section 17 provides that no person's property shall be taken, damaged or destroyed for public use without adequate compensation being made. TEX. CONST. art. I, § 17. However, to recover under the theory that property has been "taken" under article I, section 17, a plaintiff must establish that (1) the *State* intentionally performed certain acts, (2) which acts resulted in a "taking" of the plaintiff's property, (3) for public use. *Dalon v. City of DeSoto,* 852 S.W.2d 530, 538 (Tex.App.-Dallas 1992, writ denied) (emphasis added). The property damage must not be attributable to negligent acts of the governmental unit in order to maintain an inverse condemnation action. *Id.* We find no authority that would transform the limited immunity respecting a contractor's performance into inverse condemnation. Nevertheless, the claims against NEOSHO are based on allegations of negligence. Inverse condemnation claims against governmental units must not be founded on claims of negligence. *Id.* We overrule Reunion's first issue.

We next address Reunion's third issue in which it argues the trial court erred in granting summary judgment to DART and NEOSHO on Reunion's inverse condemnation claims and in failing to vacate that summary judgment after the jury reached its verdict and render judgment against NEOSHO on the inverse condemnation claim.

■ In reviewing the trial court's decision to grant summary judgment, we apply well-known standards. *See Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). An appellate court reviewing

a summary judgment must consider whether reasonable and fair-minded fact finders could differ in their conclusions in light of all the evidence presented. *See Wal–Mart Stores, Inc. v. Spates,* 186 S.W.3d 566, 568 (Tex.2006); *City of Keller v. Wilson,* 168 S.W.3d 802, 822–24 (Tex. 2005). There is only one standard for reviewing a summary judgment: a reviewing court must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *City of Keller,* 168 S.W.3d at 824.

Whether a "taking" has occurred under inverse condemnation is a question of law. *Bennett v. Tarrant County Water Control & Improvement Dist. No. 1,* 894 S.W.2d 441, 448 (Tex.App.-Fort Worth 1995, writ denied) (citing *Waddy v. City of Houston,* 834 S.W.2d 97, 102 (Tex.App.-Houston [1st Dist.] 1992, writ denied)). In order to recover under the theory that property has been taken under article I, section 17 of the Texas Constitution, one must establish that the governmental entity intentionally performed certain acts that resulted in a "taking" of one's property for public use. *Bennett,* 894 S.W.2d at 448. Government-induced flooding must be intermittent, frequent, and inevitably recurring to constitute a compensable taking, otherwise it is merely a consequential injury or a tort. *Id.* at 449. Flooding that can be characterized as a random occurrence, not inevitably recurring, does not amount to a taking of property. *Id.* Proof of damage alone will not suffice to prove a taking. *Id.*

We have already determined that Reunion could not bring an inverse condemnation claim against NEOSHO. *See Dalon,* 852 S.W.2d at 538. As to DART, the record shows the trial court granted DART's second motion for summary judgment without stating the grounds for its ruling. When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Bustillos v. Jacobs,* 190 S.W.3d 728, 732 (Tex.App.-San Antonio 2005, no pet.) (citing *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989)).

The record shows the flooding at issue in this case occurred during construction, and there is no evidence the flooding continued after construction was complete. Thus, the flooding in this case was a random occurrence, not inevitably recurring, and did not amount to a taking of property. *See Bennett,* 894 S.W.2d at 449. Further, there was no evidence that DART or NEOSHO, for that matter, acted intentionally in causing the flooding. *See id.* Under these circumstances, the trial court did not err in granting DART's second motion for summary judgment. *See Wal–Mart Stores, Inc.,* 186 S.W.3d at 568; *City of Keller,* 168 S.W.3d at 822–24. Accordingly, we overrule Reunion's third issue.

In its second issue, Reunion argues this Court should render judgment against NEOSHO for the full amount of damages Reunion suffered as a result of the flooding because there is no evidence to support the jury's findings that Reunion's negligence proximately caused the property damage and thirty-five percent of the damage was attributable to Reunion. Therefore, Reunion argues, the judgment to be rendered by this Court should not be reduced by thirty-five percent. However, because we have concluded Reunion is not entitled to any award, we need not address whether that award should be reduced by thirty-five percent.

We affirm the trial court's judgment.