**MARTIN K. EBY CONSTRUCTION CO., Appellant**

v.

**LAN/STV, A Joint Venture of Lockwood, Andrews & Newnam, Inc. and STV Incorporated, Appellees.**

No. 05–09–00946–CV.

Court of Appeals of Texas, Dallas.

Aug. 29, 2011.

Jeffrey S. Levinger, Brett D. Kutnick, Hankinson Levinger LLP, Daniel D. Davis, Davis Law Firm, Jeffrey A. Ford, Ford White & Nassen, P.C., Dallas, for Appellant.

Thomas Clark Wright, Wright & Close, LLP, Houston, James W. Grau, Grau Koen, P.C., Dallas, for Appellees.

Before Justices MARTIN RICHTER, LANG, and FILLMORE.

## OPINION

Opinion By Justice LANG.

Martin K. Eby Construction Co. (Eby) appeals from a trial court's judgment following a jury trial. In the trial court, Eby sought damages for delays and increased costs it alleged were caused by LAN/STV, a Joint Venture of Lockwood, Andrews & Newnam, Inc. and STV, Incorporated's (LAN/STV) negligent misrepresentations regarding construction plans prepared for a light rail line project by LAN/STV and others. Eby raises three issues contending the trial court erred by: (1) failing to disregard the findings that Eby was negligent and responsible for fifteen percent of the damages; (2) failing to disregard the findings that Dallas Area Rapid Transit (DART) was negligent and responsible for forty percent of the damages; and (3) failing to disregard the finding that LAN/STV was responsible for forty-five percent of the damages. We decide against Eby on its issues.

LAN/STV filed a cross-appeal. It asserts five issues contending: (1) it enjoys derivative sovereign immunity as a contractor for DART and cannot be held liable for tort claims; (2) the evidence is legally insufficient to support the damages award; (3) the trial court erred in not applying the economic loss rule to bar Eby from recovering damages; (4) the trial court erred in not allowing a settlement credit; and (5) the evidence is legally insufficient to support the jury finding of negligent misrepresentation. We decide against LAN/STV on its issues. The trial court's judgment is affirmed.

### I. Factual and Procedural Background

DART awarded Eby a contract to construct a portion of the DART rail line in Dallas known as the NW–1A project. Eby

based its bid upon documents submitted by DART. LAN/STV was primarily responsible for the preparation of the plans and specifications in the bid documents. After construction began, Eby encountered numerous delays and increased costs. Eby attributed those problems to inaccuracies in the bid documents.

Eby sued DART in United States District Court for breach of contract and misrepresentation. They settled for $4,700,000. Eby then sued LAN/STV in the trial court below alleging claims for negligence and negligent misrepresentation. The terms of the settlement between Eby and DART were presented as evidence by both Eby and LAN/STV at trial. The jury found LAN/STV made negligent

misrepresentations and awarded damages in the amount of $5,000,000. The jury also found negligence and percentages of responsibility for the damages as follows: Eby—fifteen percent; DART—forty percent; and LAN/STV—forty-five percent. The trial court awarded Eby forty-five percent of the $5,000,000 or $2,250,000. This appeal timely followed.

## A. Eby's Appeal

Eby contends the trial court erred in failing to disregard the jury findings that both it and DART were negligent and responsible for a portion of the damages and that LAN/STV was responsible for only a portion of the damages.[1]

1. The pertinent questions and definitions in the trial court's charge and the jury's answers are as follows:

 **Definitions**

 \* \* \*

 "Proximate cause" means that cause which, in a natural and continuous sequence produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

 \* \* \*

 **Question No. 1:**
 Did LAN/STV make a negligent misrepresentation on which Eby justifiably relied? Negligent misrepresentation occurs when—
 a. a party makes a representation in the course of its business or in a transaction in which it has a pecuniary interest,
 b. the representation supplies false information for the guidance of others in their business, and
 c. the party making the representation did not exercise reasonable care or competence in obtaining or communicating the information.
 Answer "Yes" or "No."
 Answer: Yes
 **Question No. 2:**

 What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Eby for its damages, if any, that were proximately caused by the negligent misrepresentation, if any, of LAN/STV?
 Consider the following element of damages, if any, and none other:
 The difference, if any, between the value of what Eby gave in the transaction and the value of what it received in the transaction.
 Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not include interest on any amount of damages you may find.
 Answer in dollars and cents for damages, if any.
 Answer: $5,000,000.00
 **Question No. 3:**
 Did the negligence, if any, of Eby proximately cause the damages in question?
 Answer "Yes" or "No."
 Answer: Yes
 **Question No. 4:**
 Did the negligence, if any, of the Dallas Area Rapid Transit proximately cause the damages in question?
 Answer "Yes" or "No."
 Answer: Yes
 **Question No. 5:**
 Did the negligence, if any, of Parsons Transportation Group, Inc. proximately cause the damages in question?

### 1. Eby's Negligence

■ In its first issue, Eby contends the trial court erred by failing to disregard the findings that Eby was negligent and responsible for fifteen percent of the damages. It asserts these findings are legally immaterial to the controlling findings in jury questions one and two that LAN/STV made negligent misrepresentations that proximately caused damages, there is no evidence to support a negligence finding as to Eby, and any negligence on Eby's part could not have been a proximate cause of the original incident.[2]

■ A trial court may disregard a jury finding only if it is not supported by evidence or if the issue is immaterial. *See Spencer v. Eagle Star. Ins. Co. of Am.*, 876 S.W.2d 154; 157 (Tex.1994). A jury question that is mandated by law cannot be immaterial. *See Se. Pipe Line Co. v. Tichacek*, 997 S.W.2d 166, 172 (Tex.1999). A finding may be rendered immaterial by other findings if there is a fatal conflict. *See Beltran v. Brookshire Grocery Co.*, —— S.W.3d ——, ——, 2011 WL 1797629 (Tex. App.-Dallas, 2011, no pet. h.). For example, a finding that a party's negligence was the sole cause of an accident renders the comparative fault finding of the other party immaterial. *Am. Jet, Inc. v. Leyendecker*, 683 S.W.2d 121, 127 (Tex.App.-San Antonio 1984, no writ).

■ Section 33.003 requires the trier of fact to determine the percentage of responsibility for each claimant, defendant, settling person, and responsible third party who "caus[ed] or contribut[ed] to cause in any way the harm for which recovery of damages is sought...." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.003(a)(1) (West 2008). This statutory mandate is not discretionary. *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 694 (Tex. 2007).

Eby contends the jury's findings that Eby was negligent and responsible for fifteen percent of the damages are immaterial because of the "unique" way its negligent misrepresentation theory was submitted to the jury in question two. The jury was asked specifically to find the amount of damages, if any, that were proximately caused by the negligent misrepresentation of LAN/STV. Eby argues that because of the requirement of a spe-

---

Answer "Yes" or "No."
Answer: No
 Assign percentages of responsibility only to those you found caused or contributed to cause the damages in question. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to any one is not necessarily measured by the number of acts or omissions found.
**Question No. 6:**
 For each of those you found caused or contributed to cause the damages to Eby, if any, find the percentage of responsibility attributable to each:

| | | |
| --- | ---------------------------------- | ----- |
| a. | LAN/STV | 45% |
| b. | Eby | 15% |
| c. | Dallas Area Rapid Transit | 40% |
| d. | Parsons Transportation Group, Inc. | 0% |
| | Total | 100% |

2. On appeal, Eby argued question three as to Eby's negligence should have been disregarded because any negligence on its part could not have been a proximate cause of the original incident. However, that complaint was not raised in the trial court. At trial, Eby raised two objections, first, that there was no evidence to support its submission and second, "because the issue of Eby's negligence is already submitted through the justifiable reliance element in Question Number 1. And, thus, to submit it again in Question Number 3 would be duplicative." Eby objected to question 6(b) on the same ground. Any complaint on appeal not raised at trial is waived. *See* TEX.R.APP. P. 33.1(a); *Riyad Bank v. Gailani*, 61 S.W.3d 353, 356 n. 2 (Tex.2001); *Davis v. Campbell*, 572 S.W.2d 660, 663 (Tex.1978).

cific causal link between the $5,000,000 damages award and LAN/STV's negligent misrepresentation, it is immaterial that any negligence on its part "caused or contributed to cause *those* damages." (emphasis in original). According to Eby, the term "damages in question" used in question three, refers to the part of the total damages it claimed of approximately $13,800,000 that was not proximately caused by LAN/STV's negligent misrepresentation. However, we cannot agree with Eby that these findings are immaterial and should have been disregarded by the trial court.

The term "damages in question" is not defined in the charge and no other damages are addressed in the charge other than in question three. The charge does not direct the jury to somehow distinguish between the negligent misrepresentation of LAN/STV and the negligence of Eby, DART, and Parsons inquired about in questions three, four, and five. Nor do we find any submission of a suggested charge by Eby to instruct the jury on how to make such differentiation. Certainly, the reference in questions three, four, and five about the "damages in question" gives no hint there is a difference to be assigned to damages proximately caused by LAN/STV's negligent misrepresentation, i.e., $5,000,000, and the "damages in question," if any, caused by Eby's negligence. Further, the definition of proximate cause provided to the jury instructed that there could be more than one proximate cause. Eby did not object to that instruction nor did it offer any variation to it. Indeed, the jury found more than one proximate cause in its responses to questions three and four. We also note, no error is assigned before us as to the form in which the charge was submitted by the trial court. *See Allen v. Am. Nat'l Ins. Co.,* 380 S.W.2d 604, 609 (Tex.1964). The jury's responses in questions one and two do not render the proportionate responsibility findings as to Eby's negligence immaterial.

Nowhere in its briefing does Eby address how the trial court or this Court can ignore a finding as to an allegedly negligent party's negligence when submission of proportionate responsibility in a negligence case is mandated by the clear language of the statute. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.003(a)(1); *FFP Operating Partners,* 237 S.W.3d at 694. Moreover, Eby does not point to, nor can we see, any fatal conflict between the findings regarding LAN/STV's negligent misrepresentation and the findings regarding Eby's negligence that would permit either the trial court or this Court to disregard the findings. *See Beltran,* —— S.W.3d at ——.

■ Eby also contends there is no evidence to support the finding it was negligent. We disagree. In a legal sufficiency challenge respecting an issue on which the opposing party had the burden of proof, we review the evidence in a light that tends to support the finding of the disputed facts and disregard all evidence and inferences to the contrary. *Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 782 (Tex.2001). We must credit the favorable evidence if reasonable jurors could and disregard the contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex.1998).

The record reflects testimony from at least two witnesses as to Eby's actions. Chris Masters, assistant vice president of rail program support for DART, testified that he worked for LAN/STV during the NW-1A project as an office engineer. He oversaw processing pay requests including

negotiating cost increases resulting from changes made to the project. Masters observed Eby in the "process of its submission of paperwork for additional claims." He testified that Eby did not provide the detailed information necessary to resolve these claims. According to Masters, Eby made claims for increased costs due to changes to the project, but failed to demonstrate how the changes caused damages.

Bradford Bright employed by Veritas Advisory Group, a company that analyzes construction disputes, testified that when Eby encountered a problem on the project it submitted a "proposed field change" and sought a change order from DART. Once DART issued the change orders, Eby would create a "request for equitable adjustment" in an attempt to "capture the remainder of their costs." According to Bright, Eby was required to demonstrate a connection between the change and the increase in costs. Eby made five requests for equitable adjustment that were rejected because Eby failed to adequately support the allegations as to damages sustained. Bright testified that these requests were the result of Eby's own estimating problems and not the result of any of the allegations Eby made against DART or LAN/STV. Moreover, he testified that documents from DART indicated problems with Eby's work such as its use of backfill materials and other components not called for by project specifications. As part of the project, Eby had to design and install shoring at two locations. There were problems with the installation of the shoring such as washouts due to weather and the shoring had to be redesigned and rebuilt. Bright testified this was a significant cost for Eby. This evidence is legally sufficient to support the jury's finding that Eby was negligent.

The first issue is decided against Eby.

## 2. DART's Negligence

In its second issue, Eby contends the trial court erred in failing to disregard the findings that DART was negligent and responsible for forty percent of the damages. Eby raises three arguments with regard to the finding of DART's negligence. First, "for the same reasons the findings relating to Eby are immaterial," Eby contends the finding of DART's negligence is immaterial. Second, Eby asserts that by failing to disregard the findings, the trial court allowed LAN/STV to receive more than one credit for the settlement. Third, Eby asserts the evidence is legally and factually insufficient to support the findings.

We determined the jury's findings as to Eby were not immaterial. Eby's arguments as to why the findings relating to DART are immaterial are identical to those raised as to the Eby findings. We need not repeat our analysis. We conclude the findings relating to DART are not immaterial.

■ We turn now to Eby's additional argument that the jury findings relating to DART should have been disregarded by the trial court because, unless disregarded, LAN/STV will receive a credit for the DART settlement that exceeds what is allowed by sections 33.012(a) and 33.013(a). Eby cites *Roberts v. Williamson*, 111 S.W.3d 113, 123 (Tex.2003) in support of its argument. Again, we do not agree with Eby's contention.

In order to evaluate Eby's contention, we review the Supreme Court's conclusions in *Roberts*. In *Roberts*, the Texas Supreme Court reviewed a medical malpractice case where a jury assessed eighty-five percent responsibility to the settling parties and fifteen percent to the non-settling defendant. The trial court concluded the non-settling defendant must be

responsible for fifteen percent of all damages found by the jury. However, on appeal, the non-settling defendant argued the trial court improperly applied the settlement credit in calculating the damages against her. She maintained the trial court should have reduced the jury's damage award with the settlement credit before multiplying that number by the proportionate responsibility as found by the jury. The non-settling defendant argued the method she sought to apply was the proper means by which her net damages responsibility should be calculated. The supreme court found no merit in the contention concluding the applicable statutes do not provide for the calculation as argued for by appellant.

The supreme court explained, in part,

The rules of proportionate responsibility and settlement credits are found in Chapter 33 of the Civil Practices and Remedies Code. Pertinent here are section 33.012 and 33.013, which provide in relevant part:

§ 33.012. **Amount of Recovery**

(a) ... the court shall reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a percentage equal to the claimant's percentage of responsibility.

(b) If the claimant has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a credit equal to one of the following ...

(1) the sum of the dollar amounts of all settlements ...

§ 33.013. **Amount of Liability**

(a) Except [when a defendant is jointly and severally liable], a liable defendant is liable to a claimant only for the percentage of damages found by the trier of fact equal to that defendant's percentage of responsibility with respect to the personal injury, property damage, death, or other harm for which the damages are allowed.

Tex. Civ. Prac. & Rem.Code Ann. §§ 33.012(a),(b)(1), 33.013(a). Section 33.012 refers to "the amount of damages to be recovered by the claimant," while section 33.013 refers to the "damages found by the trier of fact." [citation omitted] The "amount of damages to be recovered by the claimant under section 33.012 must be reduced by the claimant's proportionate responsibility and by settlements. No corresponding reduction is prescribed under section 33.013 because "the damages found by the trier of fact" are not affected by settlement or the claimant's shared responsibility. Thus, damages under these two sections are the same only when the claimant has not settled and shares no responsibility. And, although related, the two sections pose separate inquiries. Section 33.012 controls the claimant's total recovery, while section 33.013 governs the defendant's separate liability.

*Roberts,* 111 S.W.3d at 122–23.

Section 33.012(b), section 33.013(a), and *Roberts* do not direct the result Eby suggests in light of the record before us. In contrast to *Roberts* where the settlement amount does not appear to have been in evidence, it is clear from the record in this case that the settlement was part of the damage models of Eby and LAN/STV. Eby assumes the jury deducted the amount of the DART settlement in awarding $5,000,000 damages. However, as the trial court noted at the second hearing on the motion for judgment: "I don't know if they followed your damage model or not." The record does not reflect how the jury

arrived at the damages awarded.[3] We cannot agree with Eby's contention that the trial court's refusal to disregard the findings as to DART's percentage of responsibility somehow gave LAN/STV an impermissible double settlement credit.

◼ Finally, Eby contends there was no legal or factual basis to submit questions regarding DART's negligence or percentage of responsibility. Eby argues DART could never be liable to either Eby or LAN/STV for negligence because DART's contractual relationship with both parties would preclude such a claim. *See, e.g., Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986). Eby did not raise this objection at trial.[4] Any complaint on appeal not raised at trial is waived. *See* TEX.R.APP. P. 33.1(a); *Riyad,* 61 S.W.3d at 356 n. 2.

We deem Eby's argument that there is no factual basis for submitting questions as to DART's negligence to assert the evidence is legally insufficient to support those findings. The record includes testimony of Gary Zipen, a consultant for DART, who wrote DART's original quality assurance manual. He testified that this construction project, the NW–1A project, was not subject to the same quality assurance scrutiny as the first six DART projects that he worked on. Also, Richard Bean, president of Eby, testified that there were some delays caused by DART. Finally, Dennis Henning, the person in charge of the project for LAN/STV, testified that DART had the responsibility of the overall design in the bid documents. On this record, we cannot agree with Eby that the

evidence is legally insufficient in this regard.

We conclude the trial court did not err in failing to disregard the jury findings that DART was negligent and responsible for forty percent of the damages. We decide the second issue against Eby.

### 3. LAN/STV's Negligence

In its third issue, Eby contends the trial court erred in failing to disregard the jury finding that LAN/STV was responsible for forty-five percent of the damages. Eby contends that allowing the forty-five percent reduction, essentially gave LAN/STV an impermissible double settlement credit. We note Eby acknowledges its argument regarding issue three is similar to its argument regarding issue two above contending we must disregard the jury finding of DART's forty percent responsibility. We cannot agree with Eby's contention on this issue for the same reasons described above. The trial court properly applied the forty-five percent of proportionate responsibility to the $5,000,000, the "damages found by the trier of fact." *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 33.012(b), 33.013(a); *Roberts,* 111 S.W.3d at 122–23.

We cannot conclude the trial court erred in applying the forty-five percent proportionate responsibility finding to the damages "found by the trier of fact." Eby's third issue is decided against it.

### B. LAN/STV's Cross–Appeal

In five issues, LAN/STV contends it has derivative sovereign immunity from DART, the evidence is legally insufficient to support the jury findings on negligent

---

**3.** Eby sought damages in the amount of $13,800,000. Subtracting the $4,700,000 settlement from that amount equals $9,100,000, not the $5,000,000 damages found by the jury.

**4.** At trial, Eby objected to question number four on two grounds: (1) LAN/STV would be responsible as a matter of law for any negligence of DART; and (2) LAN/STV was already given credit for the settlement as between DART and Eby and to apply a further reduction would be duplicative.

misrepresentation and damages, and the trial court erred in failing to apply the economic loss rule and the settlement credit.

### 1. Derivative Immunity

LAN/STV contends that it is immune from liability because DART would be immune from liability had it been sued on the same claims. Relying on the transportation code, LAN/STV maintains that, as an independent contractor working for DART, it is liable "only to the extent that the authority would be liable if it were performing the function." TEX. TRANS. CODE ANN. § 452.056(d) (West Supp. 2010); TEX.REV.CIV. STAT. ANN. Art. 6550d (West Supp. 2010). This Court has already decided this issue against LAN/STV in a prior appeal in this case. *Martin K. Eby Const. Co. v. LAN/STV,* 205 S.W.3d 16 (Tex.App.-Dallas 2006, pet. denied) (*Eby I* ).[5] LAN/STV invites us to overrule *Eby I.* We decline to do so.

However, LAN/STV has now raised a slightly different argument in this appeal contending that *Eby I* conflicts with this Court's later decision in *Reunion Hotel/Tower Joint Venture v. Dallas Area Rapid Transit,* 250 S.W.3d 203 (Tex.App.-Dallas 2008, no pet.). We disagree.

In the *Reunion* case, Reunion sued both DART and NEOSHO, DART's independent contractor, for water damage to its property that allegedly arose from a public works project and the installation of an electric sump pump. *Id.* at 206. Having no contractual relationship with either defendant, Reunion alleged causes of action for negligence, inverse condemnation, and violations of the Texas Tort Claims Act, the Texas Water Code, and the Texas Transportation Code. With the exception of the negligence claim against NEOSHO, all claims were dismissed by summary judgment. *Id.* A jury found that the negligence of both Reunion and NEOSHO caused the property damage. Ultimately, the trial court rendered a take nothing judgment based on an additional jury finding that the damages did not arise from the operation of the sump pump. *Id.* We concluded, in part, because the jury found that the property damages did not arise from the use of a motor-driven sump pump, "Dart would not have been liable for the property damages and, therefore, neither is NEOSHO. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1) (Vernon 2005)." *Id.* at 207. Contrary to LAN/STV's contention, *Eby I* is factually and legally distinguishable from *Reunion* and does not conflict with the holding in *Reunion.* LAN/STV's first cross-issue is decided against it.

### 2. LAN/STV's Cross–Issues on Damages

■ In its second cross-issue, LAN/STV contends there is no evidence to support the jury's award of damages because Eby did not prove out-of-pocket damages. In its third cross-issue, LAN/STV contends that Eby's damages are barred by the economic loss rule. Specifically, as to issue three, LAN/STV argues Eby did not sustain an independent injury and no Texas case holds that a contractor can maintain a tort action against a design professional for purely economic loss. We address cross-issues two and three together, in part, because LAN/STV has asserted similar propositions as to each.

5. In that case, we decided the trial court erred when it granted LAN/STV's motion for summary judgment dismissing the case based on LAN/STV's claim of derivative governmental immunity from liability. The position LAN/STV took was that because it prepared the construction plans for DART and DART was immune, LAN/STV was likewise immune. We disagreed and reversed and remanded the case.

In a legal sufficiency challenge respecting an issue on which the opposing party had the burden of proof, we review the evidence in a light that tends to support the finding of the disputed facts and disregard all evidence and inferences to the contrary. *Harrison,* 70 S.W.3d at 782. We must credit the favorable evidence if reasonable jurors could and disregard the contrary evidence unless reasonable jurors could not. *Wilson,* 168 S.W.3d at 827. If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails. *See Formosa Plastics Corp. USA,* 960 S.W.2d at 48; *see also King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003) (more than scintilla of evidence exists when evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions").

▆▆▆ The Texas Supreme Court determined the measure of damages recoverable for a negligent misrepresentation claim is as follows:

(1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is the legal cause, including

(a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

(b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.

(2) the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

*Fed. Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991). The proper measure of damages for a negligent misrepresentation claim has been described as

out-of-pocket costs. *See Esty v. Beal Bank S.S.B.,* 298 S.W.3d 280, 302 (Tex. App.-Dallas 2009, no pet.) (citing *DSA, Inc. v. Hillsboro Indep. Sch. Dist.,* 973 S.W.2d 662, 663–64 (Tex.1998) (per curiam)). Lost profits and overhead costs are not recoverable in a negligent misrepresentation claim. *Transcon. Realty Investors, Inc. v. The John T. Lupton Trust,* 286 S.W.3d 635, 646 (Tex.App.-Dallas 2009, no pet.). LAN/STV contends that Eby proved only benefit-of-the-bargain damages that included add-ons such as lost profits and overhead, that is, what it would recover if it had a contract with LAN/STV. It argues this model proposes damages that would impermissibly put Eby in a better position, not as good a position as it would have been in if it had not bid on the project.

The evidence shows James Grier, the CEO and chairman of Eby, testified that Eby was losing about $1 million dollars a month on the project. He further testified that Eby paid about $16 to $18 million out of its own pocket to complete the project. Richard Bean, president of Eby, testified that just six months into the project, Eby had already lost $4 to $5 million. Bright, LAN/STV's expert witness on damages, conceded that Eby incurred costs of approximately $12.3 million above its estimate. Eby was seeking $13,825,561.51 in damages. The $5,000,000 awarded by the jury is well within the evidence related solely to Eby's out-of-pocket costs. We decide the second cross-issue against LAN/STV.

▆▆▆ We now address LAN/STV's contention that the economic loss rule bars Eby's recovery. When a party's acts breach a contract and the only alleged injury is economic loss to the subject of the contract itself, the action sounds in contract alone. *Sw. Bell Tel. Co. v. De-*

*Lanney,* 809 S.W.2d 493, 495 (Tex.1991); *Jim Walter Homes, Inc.,* 711 S.W.2d at 618; *Mickens v. Longhorn DFW Moving, Inc.,* 264 S.W.3d 875, 879 (Tex.App.-Dallas 2008, pet. denied). The economic-loss rule generally precludes recovery in tort for economic losses resulting from the failure of a defendant to perform under its contract with a plaintiff. *Lamar Homes, Inc. v. Mid–Continent Cas. Co.,* 242 S.W.3d 1, 12 (Tex.2007). In operation, the rule restricts contracting parties to contractual remedies for such economic losses, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence. *Id.* at 12–13 (citing *Jim Walter Homes, Inc.,* 711 S.W.2d at 618). However, Texas courts have applied the economic loss rule to preclude tort claims between parties who have no contractual relationship. *See Sterling Chem., Inc. v. Texaco, Inc.,* 259 S.W.3d 793, 797 (Tex.App.-Houston [1st Dist.] 2007, pet. denied) (claim for negligent misrepresentation sought "business interruption" damages barred by economic loss rule). If a plaintiff asserts a negligent misrepresentation claim, but seeks only benefit-of-the-bargain damages as opposed to the permissible out-of-pocket damages, the plaintiff cannot establish an independent injury and the economic loss rule bars recovery. *Id.* at 798.

LAN/STV contends that Eby made no attempt to separate the benefit-of-bargain damages from its out-of-pocket damages. In this circumstance, LAN/STV argues, there is no evidence of the requisite independent injury. It also points out that Eby sought the same damages in its lawsuit against DART for breach of contract.

The case of *CCE, Inc. v. PBS & J Const. Svs., Inc.,* No. 01–09–00040–CV, 2011 WL 345900 (Tex.App.-Houston [1st Dist.] Jan. 28, 2011, pet. denied) (mem. op.) is factually similar and instructive. The Texas Department of Transportation hired PBS & J to draft engineering plans for a new road. It then awarded the construction contract to CCE. *Id.* at *1. After construction was underway, TxDOT informed CCE that silt had discharged from the road project and accumulated on nearby private property, and the "siltation" arose from CCE's "failure to provide control measures required by the plan." *Id.* TxDOT was told to correct the alleged contract violations or it would be declared in default. Then, TxDOT declared CCE in default. As a result, CCE hired another contractor to complete the project, causing CCE to expend over $2 million more than it would have spent had it been able to complete the project on its own. *Id.* at *2.

CCE sued PBS & J for negligent misrepresentation claiming that its storm water pollution prevention plan contained "numerous false statements" and was the cause of the "siltation" problem. *Id.* The trial court granted PBS & J summary judgment based on the argument that CCE sought only benefit-of-the-bargain damages, which would "put CCE in the position of having the full benefit of its TxDOT contact had the contract been fully performed." *Id.* at *8. The court of appeals reversed, concluding that "CCE's damages are actually for its 'pecuniary loss suffered otherwise as a consequence of [CCE's] reliance upon the misrepresentation[s]' of PBS & J." *Id.* (quoting Restatement (Second) of Torts § 552B(1)(b)). The damages CCE sought were reimbursement for expenses "over and above what it would have cost CCE" to complete the project itself. Further, the court of appeals concluded those damages constituted "reliance damages as measured by [CCE's] out-of-pocket expenditures and consequential losses, not damages for the benefit of its bargain on its contract with TxDOT as measured by any lost sales or profits." *Id.*

In its first amended petition, Eby sought damages for the "great losses" it incurred in performing its obligations for the project caused by the "changes, modifications, and rework as a result of the errors, inconsistencies and inadequacies in the LAN/STV created plans." As set forth above, we concluded that Eby presented sufficient evidence of its out-of-pocket damages to support the damages finding. Like the plaintiff in *CCE, Inc.*, Eby presented evidence that its out-of-pocket expenses were incurred in addition to the costs for the delays, changes, modifications, and rework caused by inaccuracies in the bid documents prepared by LAN/STV. In so doing, Eby established an injury that is independent of its breach of contract claim against DART. On this record, we cannot conclude Eby's claims for damages in this case constituted claims for damages for the benefit of its bargain on its contract with DART that would be measured by lost sales or profits. We conclude the economic loss rule does not bar Eby's recovery of damages on its negligent misrepresentation claim.

Additionally, LAN/STV contends the economic loss rule bars Eby's damages because no Texas case holds that a contractor can maintain a tort action against a design professional with whom it has no privity of contract for purely economic loss. To support its position, LAN/STV relies upon *Bernard Johnson, Inc. v. Continental Constructors, Inc.*, 630 S.W.2d 365 (Tex.App.-Austin 1982, writ ref'd n.r.e.). In *Bernard Johnson*, a construction company sued an architect for increased costs resulting from the architect's alleged negligence in administering the project in accordance with the architect's contract with the Texas Parks and Wildlife Department (TPWD). *Id.* at 366–67. However, the Court of Appeals concluded the contractor was not owed a duty by the architect to properly perform administrative duties

provided for only under the terms of the contract between the architect and TPWD. *Id.* at 375–76. *Bernard Johnson* is distinguishable from the case before us. Eby did not submit its general negligence claim relating to LAN/STV's management of the project for DART. Eby's negligent misrepresentation claim did not relate to any administrative duties owed by LAN/STV under its contract with DART. Importantly, as we concluded above, Eby's damages were measured by its out-of-pocket expenses, as authorized by law, not what is defined as economic loss. *Esty*, 298 S.W.3d at 302. We decide the third cross-issue against LAN/STV.

### 3. Negligent Misrepresentation

LAN/STV contends in its fifth cross-issue there is no evidence to support the jury finding of negligent misrepresentation. Although LAN/STV contends the plans were mere opinions, contained numerous disclaimers, and Eby could not have justifiably relied on the plans, LAN/STV's argument is that the evidence is legally insufficient to support a negligent misrepresentation finding. The elements of a negligent misrepresentation claim are: (1) a defendant, in the course of its business or in a transaction in which it had a pecuniary interest, made a representation; (2) the defendant supplied false information for the guidance of another in the other's business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Sloane*, 825 S.W.2d at 442.

The record reflects Bill Smith, an architect and peer reviewer of DART, testified that the schedules set forth in the bid documents were not done with reasonable care and competence by LAN/STV. He said there were many errors in the information about the bridge structures. Eby

could not install the utility lines underneath one of the platforms as shown in the bid documents because they failed to show a series of horizontal steel straps below the ground. The utility lines could not be installed as shown without cutting through one of the horizontal steel straps which, in turn, would cause the platform to fail. After a delay of several months, LAN/STV ultimately arrived at a solution that put the utility lines above the top most strap. Smith said this was a failure to coordinate on the part of LAN/STV and referred to it as a "major breakdown in their coordination and design." In addition, the location of many of the utility lines were not accurate. For instance, a manhole that was supposed to tie into a storm sewer pipe was actually located 147 feet away from what was shown on the drawing. Also, the bid documents included inaccurate information about the soil conditions. Further, Zipen testified that he performed a surveillance, a brief review to determine whether the work was being performed in accordance with the quality assurance standards. The surveillance revealed numerous errors in both the drawings and calculations. Zipen also found the basic principles of independent checking of work had not been performed. The errors he identified were not corrected before the drawings were submitted to DART for distribution to potential bidders. Eby testified that it relied on the bid documents in formulating its bid and it suffered pecuniary loss as a result of the misrepresentations.

We conclude the evidence is legally sufficient to support the finding of LAN/STV's negligent misrepresentation. The fifth cross-issue is decided against LAN/STV.

### 4. Settlement Credit

■ In its fourth cross-issue, LAN/STV contends the trial court erred in failing to apply the $4.7 million settlement credit to reduce the damages found by the jury. Section 33.012(b) states that "[i]f the claimant has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the claimant with respect to a cause of action by the sum of the dollar amounts of all settlements." TEX. CIV. PRAC. & REM.CODE ANN. § 33.012(b) (West 2008). We agree with LAN/STV that the statute is mandatory. However, we cannot agree with the result LAN/STV suggests.

At the hearing on the motion for judgment, counsel for LAN/STV argued that a settlement credit for all monies paid by DART should be applied to the damages awarded by the jury. The exchange between counsel for LAN/STV and the trial court is illuminating.[6]

The record shows not only LAN/STV, but also Eby, presented to the jury evi-

---

6. The following exchange occurred between LAN/STV's counsel and the trial court:

The Court: Answer me. Did you or not, in the presentation of the evidence did you take $7 million out as part of your damage model, for the bottom line?

[Counsel]: Our damages model was totally different than theirs, so it's not a matter of subtracting the $7 million. This case is unique, Your Honor.

The Court: Oh, yes, it is. I agree.

[Counsel]: Because the plaintiffs made a choice the [sic] tell the jury about their settlement.

The Court: The jury had all evidence of all the matters, all the monies they received.

[Counsel]: That's right.

The Court: From DART and anybody else.

[Counsel]: They've got the evidence of the original contracts and then they got the evidence of all the settlements and that makes this case unique. What they want to say is, by we—we made the option.

The Court: You wanted that [sic] all that evidence in too, though?

[Counsel]: Excuse me?

The Court: You wanted all that evidence in also.

dence of DART's settlement with Eby. During cross-examination, counsel for LAN/STV asked Bean if Eby received a $4.7 million dollar settlement from DART. Bean responded "Yes." Bean also acknowledged on cross-examination that DART paid Eby an additional $2,325,389 for contract modifications. Counsel for LAN/STV also elicited evidence of the DART settlement from Bright, its own expert witness on damages. Bright admitted on cross-examination that the DART settlement did not cover Eby's claims against LAN/STV. Further, LAN/STV presented a damage model that expressly included the DART settlement as part of its damages calculation and, before the jury, argued the $4.7 million DART settlement should be considered in deciding damages.

 On this record, we conclude, LAN/STV may not successfully contend that it should receive a settlement credit to reduce the jury's damages award. A party cannot complain on appeal of an action it induced or allowed. *See Dallas Cnty. v.*

*Sweitzer*, 881 S.W.2d 757, 770 (Tex.App.-Dallas 1994, writ denied) (party waived any error in use of methodology where party consented to methodology used); *Burnett Trailers, Inc. v. Polson*, 387 S.W.2d 692, 696 (Tex.Civ.App.-San Antonio 1965, writ ref'd n.r.e.) (where trial court, at party's request, deducted amount of indebtedness owed on mobile home in awarding damages to owner, party could not later seek to recover indebtedness); *Ward v. Wingate*, 280 S.W.2d 938, 939 (Tex.Civ.App.-Beaumont 1955, no writ) (party cannot complain about measure of damages that both parties sought and received at trial).

We conclude the trial court properly calculated the damages for which LAN/STV is liable. LAN/STV's fourth cross-issue is decided against it.

We affirm the trial court's judgment.

[Counsel]: Absolutely. If the plaintiffs want to tell the jury about the settlement—

The Court: No, no. You were seeking to get all that information in before the case ever started.

[Counsel]: That's right.

The Court: Okay.

[Counsel]: That's right, because the jury needed to know that these are exactly the same—I mean this is—the contention was that they've already gotten paid by DART for these damages and that was a hot point of contention. So we did want the jury to know these folks have been paid for their harm.

The Court: So you want the jury in considering any damages to Eby to already take into account the payments made by DART. That was part of your argument, wasn't it, during the trial?

[Counsel]: It's part of the argument that they've already been made whole.

The Court: That was the argument to the jury, as you're presenting your case, right?

[Counsel]: Your Honor, because of their damages model, we were responding to that, so we really didn't have a choice in that case. This is their damages model. They're the ones who were going to say—

The Court: I don't think you're being candid with, but [sic] me you can continue on. Continue on.

[Counsel]: Well, Your Honor, I'm not sure what choice we had.

The Court: Well, you wanted the record and now you're trying to dance around it because you don't want to be tied down to what actually happened, but that's okay. You can keep arguing.

[Counsel]: I mean—

The Court: You know.

[Counsel]: Your Honor, plaintiffs put up a damages model, that's what they—

The Court: Let's move on.

[Counsel]: Okay.

The Court: Let's move on.

[Counsel]: So therefore, anyway—

The Court: You're not getting $7 million credit, the jury already considered that.