

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00340-CV

MICHELLE RODRIGUEZ                                                    APPELLANT

V.

FORT WORTH TRANSPORTATION                                        APPELLEES
AUTHORITY; MCDONALD
TRANSIT, INC.; MCDONALD
TRANSIT ASSOCIATES, INC.; AND
LESHAWN VAUGHN


FORT WORTH TRANSPORTATION                                       APPELLANTS
AUTHORITY A/K/A THE T;
MCDONALD TRANSIT, INC.;
MCDONALD TRANSIT
ASSOCIATES, INC.; AND
LESHAWN VAUGHN

V.

MICHELLE RODRIGUEZ AND NEW                                       APPELLEES
HAMPSHIRE INSURANCE CO.


----------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 067-258065-12

----------

# MEMORANDUM OPINION[1]

----------

The trial court granted partial summary judgment and the petition for interpleader filed by Appellees and Cross-Appellants Fort Worth Transportation Authority, also known as The T (FWTA), McDonald Transit, Inc. (MTI), McDonald Transit Associates, Inc. (MTA), and LeShawn Vaughn (the transit defendants) in the suit brought by Appellee Michelle Rodriguez, denied Rodriguez's motion for partial summary judgment, and denied all parties' requests for attorney's fees. Both sides appealed.

In her appeal, Rodriguez argues that the trial court erred by granting partial judgment for the transit defendants, by dismissing her claims against Vaughn, and by denying her motion for partial summary judgment. In their appeal, the transit defendants complain of the trial court's denial of their requested attorney's fees.

Because we hold (1) that the trial court erred by granting the transit defendants' motion for partial summary judgment, dismissing Rodriguez's claims, and denying Rodriguez's motion for summary judgment in part and (2) that the trial court abused its discretion by granting the interpleader based on the transit defendants' arguments about the statutory cap on their liability, we reverse the

----

[1]*See* Tex. R. App. P. 47.4.

trial court's judgment in part. We affirm the trial court's judgment as to its denial of attorney's fees to the transit defendants.

## A. Background

This appeal is from two consolidated lawsuits arising out of the death of Rodriguez's mother, Judith Peterson. Peterson was struck and killed by a bus driven by Vaughn. Vaughn is an employee of MTI. MTI and MTA are both independent contractors of FWTA. Cross-Appellee New Hampshire Insurance Company (Insurance) paid worker's compensation death benefits to Rodriguez.

Rodriguez filed a wrongful death suit against the transit defendants in the 153rd District Court of Tarrant County. In a separate suit against only FWTA and Vaughn, Insurance brought claims in subrogation for negligent entrustment and respondeat superior.[2] Insurance filed its suit in the 67th District Court of Tarrant County.

In Insurance's suit, MTI filed a petition in intervention and interpleader. MTI stated that it had been sued by Rodriguez and that it would not deny its

---

[2] *See* Tex. Lab. Code Ann. § 417.001 (West 2015) (providing subrogation right for worker's compensation insurance carriers); *Franks v. Sematech, Inc.*, 936 S.W.2d 959, 960 (Tex. 1997) (construing section 417.001 and its predecessor, stating that "[t]here is but one cause of action for an employee's injuries, and it belongs to the employee," that "[i]f the employee claims compensation benefits, the insurance carrier is subrogated to the employee's rights against a third party who caused the injuries," that "a carrier who asserts a subrogation claim asserts a claim that belongs to the employee," that "[t]he carrier can assert its subrogation claim independently of the employee, . . . but that claim is still derivative of the employee's claim," and that "[t]he carrier can recover damages greater than the benefits it has paid but must remit the difference to the employee").

liability or "[p]laintiff's injuries and damages as alleged in the lawsuits." But MTI further alleged that under section 101.023(b) of the Texas Tort Claims Act (TTCA),[3] the liability of FWTA, MTI, and their employees was capped at $100,000 for all claims arising out of Peterson's death and that Rodriguez and Insurance had competing claims against that $100,000. MTI asserted that it was tendering the limit of $100,000 into the registry of the court under rule of civil procedure 43.[4] It asked that it "and all current and future parties which are entitled to the protections of the [TTCA], be dismissed from this cause, With Prejudice" and that it recover its attorney's fees and costs.

Insurance nonsuited all of its claims. On motions filed by the transit defendants, Rodriguez's case was transferred to the 67th District Court, and the two suits were consolidated.[5]

The transit defendants filed a combined amended interpleader petition and request for declaratory relief, which, unlike MTI's original interpleader petition, included all of the transit defendants. They gave the same legal basis for the interpleader as MTI had in its previous interpleader petition—a liability cap of

---

[3]Tex. Civ. Prac. & Rem. Code Ann. § 101.023 (West 2011).

[4]Tex. R. Civ. P. 43.

[5]*Cf. Franks*, 936 S.W.2d at 960–61 (stating that while a worker's compensation carrier may assert its subrogation claim independently of the employee to whom worker's compensation benefits have been paid, the employee could intervene in the subrogation suit and recover any damages exceeding the benefits the insurer had paid or was obligated to pay).

4

$100,000 shared among all four defendants. This amended interpleader petition asserted that Rodriguez's claims were defensible, but they would not defend against them if the court accepted their interpleader to resolve all of Rodriguez's claims.

Both sides filed motions for partial summary judgment. In the transit defendants' motion, they reiterated their arguments that a single limit of $100,000 applied to Rodriguez's wrongful death claim, and they asserted that Vaughn was entitled to be dismissed under the TTCA as an employee of a governmental unit.

Rodriguez filed an amended petition for a declaratory judgment that FWTA, MTI, and MTA each had a liability limit of $100,000 and that Vaughn's liability was not limited. In her response to the transit defendants' summary judgment motion, Rodriguez acknowledged that the liability limits of the TTCA applied, but she disagreed that the TTCA capped the total from all defendants at a combined total of $100,000. She argued that the interpleader was improper and must be denied.

In Rodriguez's motion for partial summary judgment, she asserted that there was no evidence that MTI had unconditionally tendered funds into the registry of the court, that it was exposed to double liability, or that it was an innocent, disinterested stakeholder. She asserted the same grounds, among others, framed as traditional summary judgment grounds. And she asked for a declaratory judgment that the liability limits in the TTCA applied separately to FWTA, MTA, and MTI, and that Vaughn's liability was not limited by the TTCA.

The trial court denied Rodriguez's motion for partial summary judgment and granted that of the transit defendants. In its order granting partial summary judgment for the transit defendants, the trial court granted the requested interpleader and dismissed all claims against the transit defendants. It found that the claims against Vaughn should be dismissed based on section 101.106(b) of the TTCA[6] and that Rodriguez's total amount of recovery against all of the defendants cumulatively was no more than $100,000 under the TTCA.

After a hearing, the trial court denied the transit defendants' request for attorney's fees. It then rendered a final judgment that further ordered that Rodriguez recover $100,000 after the exhaustion of all appeals and dismissing Rodriguez's claims with prejudice.

## B. Discussion

### 1. The grant of summary judgment for the transit defendants

In Rodriguez's first issue, she asserts that the trial court erred by granting the transit defendants' motion for partial summary judgment. Under this issue, she argues that the tort-liability limits applicable to multiple defendants apply separately to each defendant and that Vaughn is not an employee of a governmental unit under the TTCA.

---

[6]Tex. Civ. Prac. & Rem. Code Ann. § 101.106(b) (West 2011).

6

*Standard and Scope of Review*

We review a summary judgment de novo.[7] We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[8] The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law.[9]

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented.[10] The reviewing court should render the judgment that the trial court should have rendered.[11]

*Applicable Statutes*

The TTCA contains the following provisions relevant to this appeal:

---

[7] *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

[8] *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

[9] *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

[10] *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[11] *See Myrad Props., Inc. v. Lasalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009); *Mann Frankfort*, 289 S.W.3d at 848.

- except for a municipality, "liability of a unit of local government under [the TTCA] is limited to money damages in a maximum amount of $100,000 for each person and $300,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property,"[12]

- "[t]he filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents,"[13] and

- The term "employee" under the TTCA means "a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, [or] an agent or employee of an independent contractor."[14]

By their plain language, the $100,000 liability limit applies only to suits against local governments, and the provision for employees' dismissal from suits applies only to employees of a governmental unit and not to employees of the governmental unit's independent contractor.

---

[12]Tex. Civ. Prac. & Rem. Code Ann. § 101.023 (b), (c).

[13]*Id.* § 101.106(b).

[14]*Id.* § 101.001(2) (West Supp. 2015).

8

Chapter 452 of the transportation code regulates regional transportation authorities. The chapter uses the term "regional transportation authority" to describe authorities created either under that chapter (as provided for under subchapter R[15]) or under the chapter's predecessor in the revised civil statutes.[16] Section 452.052 makes a regional transportation authority a governmental unit under the TTCA.[17]

Section 452.056 authorizes a regional transportation authority to contract for the operation of all or a part of its transportation system.[18] Subsection (d) of that section provides that a private operator that has contracted with a transportation authority "is not a public entity for purposes of any law of this state *except that* an independent contractor of the authority" that performs a function of the authority "is liable for damages *only to the extent* that the authority or entity

---

[15]Tex. Transp. Code Ann. §§ 452.701–.720 (West 2013 & Supp. 2015) (setting out procedures for creating authorities under the chapter).

[16]*See id.* § 452.001(a) (West 2013) (defining "regional transportation authority" as an authority created under chapter 452 or under "Chapter 683, Acts of the 66th Legislature, Regular Session, 1979" (referring to Act of May 26, 1979, 66th Leg., R.S., ch. 683, §§ 1–27, 1979 Tex. Gen. Laws 1610, 1610–36 (adopting former Tex. Rev. Civ. Stat. art. 1118y §§ 1–26, which provided for the creation of a regional transportation authority in metropolitan areas), *repealed by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 24(a), 1995 Tex. Gen. Laws 1025, 1870–71 (creating the transportation code)).

[17]*Id.* § 452.052(c) (West 2013).

[18]*Id.* § 452.056(a)(3).

would be liable if the authority or entity itself were performing the function."[19]  By its own terms, this provision applies only to a regional transportation authority created under chapter 452 or its predecessor.[20]

Chapter 452 provides similar provisions for certain entities that provide transportation services but were not created under chapter 452 or its predecessor:[21]  transportation entities created under the subtitles of the transportation code relating to railroads,[22] rural rail transportation districts,[23] intermunicipal commuter rail districts,[24] commuter rail districts,[25] and a former title of the revised civil statutes relating to railroads.[26]  Section 452.0561 applies to

---

[19]*Id.* § 452.056(d) (emphasis added); *see also* § 452.001(a) (defining "authority" as a regional transportation authority created under chapter 452 or its predecessor).

[20]*See id.* § 452.056(d) (providing for a limitation on liability for "[a] private operator who contracts with an authority under this chapter").

[21]*Id.* § 452.0561.

[22]*Id.* §§ 111.001–112.158 (West 2011 & Supp. 2015) (regulating railroads), §§ 131.001–.903 (West 2011 & Supp. 2015) (discussing miscellaneous railways such as interurban railways, electric railways, and street and suburban railways).

[23]*Id.* §§ 172.001–.306 (West 2011 & Supp. 2015).

[24]*Id.* §§ 173.001–.359 (West 2011 & Supp. 2015).

[25]*Id.* §§ 174.001–.354 (West 2011 & Supp. 2015).

[26]*See id.* § 452.0561(a) (limiting the section's application to transportation entities created under title 5, subtitle C or D; chapter 172, 173, or 174; or former revised statutes title 112).

these entities and contains language essentially identical to that in section 452.056(d).[27]

*Liability Limits and Multiple Defendants*

In their motion for partial summary judgment, the transit defendants asserted that because wrongful death claims are derivative, all of the damages sought by Rodriguez constituted one claim; that plaintiffs under the TTCA cannot exceed a single tort claim for a single injury; and that therefore Rodriguez's wrongful death claims against all of the transit defendants are subject to a single liability cap of $100,000. They contended that their argument was supported by a unanimous line of case authority. In support of these contentions, the transit defendants cited transportation code subsections 452.0561(c) and 452.056(d), as well as a Fifth Circuit case[28] holding that those sections' "only to the extent" language gives derivative sovereign immunity to independent contractors of regional transportation authorities.

In Rodriguez's brief, she directs our attention to the text of the TTCA to argue that the liability limitation in the TTCA applies individually and separately to each governmental unit sued, rather than collectively. She notes that the subsections setting out the liability limits reference governmental units individually, rather than referring collectively to "all units": "[a] governmental unit

---

[27] *Id.*

[28] *GLF Constr. Corp. v. LAN/STV*, 414 F.3d 553, 557 (5th Cir. 2005).

11

in the state," "liability of a unit of local government," "[l]iability of a municipality," and "liability of an emergency service organization."[29] She contends that the fact that different types of governmental units have different limits supports her interpretation, because otherwise the provisions "would be unworkable and make no sense." In a suit with multiple defendants with different liability caps, whose cap would apply?

Rodriguez cites *Tarrant County Water Control & Improvement District No. 1 v. Crossland*.[30] In that case, this court considered the amount for which two government defendants—the State of Texas and a regional water district—could be jointly and severally liable.[31] The jury found the water district liable for $79,800 (under the $100,000 cap applicable to the entity) and the State liable for $229,250[32] (above the $100,000 cap applicable to the State).[33] We held that the State's liability was capped at $100,000, that the total amount of the judgment therefore would be $179,800, and that neither entity could be held jointly and severally liable for more than the cap applicable to it—that is, the plaintiff could

[29]*See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021, 101.023 (West 2011).

[30]781 S.W.2d 427, 438 (Tex. App.—Fort Worth 1989, writ denied), *disapproved of on other grounds by City of Dallas v. Mitchell*, 870 S.W.2d 21 (Tex. 1994).

[31]*Id.*

[32]Elsewhere in the opinion, this court calculated that under the jury's verdict, the State was liable for $297,250. *Id.*

[33]*Id.*

12

not recover the full amount of damages from only one of the defendants.[34]  We did not hold that the plaintiff's total damages recoverable from the two defendants together were limited to $100,000.[35]

Rodriguez distinguishes *City of Austin v. Cooksey*,[36] a case that the transit defendants had relied on in their motion.  She states that in *Cooksey*, the Supreme Court of Texas recognized that the plaintiff could have recovered more from a defendant city if the plaintiff had given the city proper notice of the claims. In that case, the court stated that "[w]hen one person is injured or killed, and one plaintiff brings suit [against the State], the applicable limit of liability is $100,000," and "[t]hat limit should not change simply because the deceased is survived by two or more statutory beneficiaries under the wrongful death statute."[37]  The court held that the phrase "per person" in the predecessor to section 101.023 "refers to the person or persons who sustain injury."[38]  Thus, in a suit against the State for the death of one person, the State cannot be held liable for more than $100,000 regardless of the number of plaintiffs in the suit.[39]

---

[34] *Id.*

[35] *Id.*

[36] 570 S.W.2d 386 (Tex. 1978).

[37] *Id.* at 387–88.

[38] *Id.* at 388.

[39] *See id.*

The court in *Cooksey* did not affirmatively hold that, but for the lack of notice, the plaintiffs could have recovered against both the State and the city. We therefore do not agree with Rodriguez's reading of the case. But as Rodriguez stated in her brief, the only reason discussed by the court for why the plaintiff could not recover against the city was that the plaintiff had not provided proper notice.[40] The court's holding that the plaintiffs' damages were limited was based on how the statutory limit applies in a wrongful death case with multiple plaintiffs. The court did not address how to cap a plaintiff's damages in a case with multiple defendants, each with limited liability. Thus, Rodriguez is correct that the case does not support the transit defendants' position.

Rodriguez then looks at transportation code section 452.056(d) and asserts that, because under that provision MTI and MTA are liable to the extent that FWTA would be, they each may be liable for an amount up to the same cap that applies to FWTA. Rodriguez states that it is undisputed that FWTA is a regional transportation authority, and thus FWTA, MTI, and MTA may each be held liable for damages up to the cap applicable to FWTA.

In their motion for partial summary judgment, the transit defendants cited both section 452.056 and section 452.0561 in support of their arguments. As noted above, section 452.056 applies only to regional transportation authorities

---

[40] *Id.*

14

created under chapter 452 or its predecessor, and section 452.0561 applies to different kinds of transportation entities.

The transit defendants did not produce any evidence that FWTA is a transportation entity covered by section 452.0561. Their summary judgment evidence included FWTA's contract with MTI and MTA, and that contract stated that MTI and MTA "are independent contractors of the FWTA, as that term is defined or understood *pursuant to § 452.056(d)*" of the transportation code. [Emphasis added.] And in support of their motion, they pointed to a case in which the Supreme Court of Texas referred to FWTA as a regional transportation authority.[41] Because the summary judgment evidence indicated that section 452.056 applied, and because the transit defendants did not establish the applicability of section 452.0561 and specifically relied on a case indicating that section 452.056 applies, summary judgment could only have been granted on the basis of section 452.056, not section 452.0561. Our review of the summary judgment is therefore limited to consideration of section 452.056.

We have found only nine Texas cases citing section 452.056. Three of those cases involve issues not relevant to this appeal.[42] We briefly discuss the other six.

---

[41] *See Oncor Elec. Delivery Co. LLC v. Dallas Area Rapid Transit*, 369 S.W.3d 845, 847 (Tex. 2012).

[42] *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 135 n.11 (Tex. 2010) (referencing section 452.056 but not addressing the appellee's argument that the appellant had immunity under that

15

In *Brown & Gay Engineering, Inc. v. Olivares*, "a private company that performed allegedly negligent acts in carrying out a contract with a governmental unit [sought] to invoke the same immunity that the government itself enjoys."[43] The Texas Supreme Court referenced sections 452.056 and the similar section 452.0561, but it did not apply those sections to its holdings or rely on them in its disposition. After reviewing Texas cases on when sovereign immunity is extended to government contractors, the court held that "we cannot adopt Brown & Gay's contention that it is entitled to share in the [Fort Bend County Toll Road] Authority's sovereign immunity solely because the Authority was statutorily authorized to engage Brown & Gay's services and would have been immune had it performed those services itself."[44]

In a concurring opinion, Chief Justice Hecht cited the language in section 452.0561 (which is substantially similar to section 452.056) as an example of when an independent contractor may act as the government, "in effect becoming the government for limited purposes."[45] Chief Justice Hecht opined that in that

---

section); *Dallas Area Rapid Transit v. Morris,* 434 S.W.3d 752, 758 n.3 (Tex. App.—Dallas 2014, pet. denied) (citing the statute in the course of determining whether DART was a common carrier); *Stephens v. Dallas Area Rapid Transit*, 50 S.W.3d 621, 633 (Tex. App.—Dallas 2001, pet. denied) (op. on reh'g) (looking at the statute in determining whether DART was a political subdivision of the state).

[43]461 S.W.3d 117, 122 (Tex. 2015).

[44]*Id.* at 127.

[45]*Id.* at 129 (Hecht, C.J., concurring).

circumstance, the independent contractor "should be entitled to the government's immunity."[46]  But the opinion of the court did not go that far.

Both Rodriguez and the transit defendants discuss the Dallas court of appeal's opinion in *Castro v. Cammerino*.[47]  The court in that case made several holdings that are relevant to the issues in this case.  Castro, an employee of a Dallas Area Rapid Transit (DART) contractor, was driving a DART bus when he struck Cammerino.[48]  When Cammerino sued him, Castro argued that he was entitled to the damages cap under TTCA section 101.106.[49]

The court construed the version of the TTCA in effect at the time, which provided that an "employee" under that Act meant "a person, including an officer or agent, who is in the paid service of the governmental unit by competent authority, but does not include an independent contractor . . . or employee of an independent contractor."[50]  The court then looked at section 452.056 and article 6550d of the revised civil statutes.[51]  The court held that under those provisions,

---

[46]*Id.*

[47]186 S.W.3d 671 (Tex. App.—Dallas 2006, pet. denied).

[48]*Id.* at 673.

[49]*Id.* at 673, 678.

[50]*Id.* at 677.

[51]*See* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 16, 1995 Tex. Gen Laws 1025, 1838 (providing that a transportation entity created under that title is a governmental unit and that "[i]f an independent contractor of the entity is performing a function of the entity or of a regional transportation authority . . . ,

"[t]he independent contractor of a governmental unit is expressly entitled to the protection of the statutory damage cap" of TTCA section 101.106.[52]

In *Martin K. Eby Construction Co., Inc.*,[53] that court considered whether an engineering firm that had contracted with DART had immunity under section 452.056 and article 6550d of the revised civil statutes.[54]  The Dallas court accepted that, under the language of the statute, an authority's independent contractor could have immunity from liability based on the function it performed.[55] It then cited its previous holding in *Castro* and stated that "we interpret the phrase 'only to the extent' to mean that the damages available against an independent contractor are limited to those damages for which the government entity would be liable" and that the engineering firm in that case could not rely on those provisions to establish immunity from liability.[56]

---

the contractor is liable for damages only to the extent that the entity . . . would be liable if the entity . . . were performing the function"), *repealed by* Act of May 11, 2009, 81st Leg., R.S., ch. 85, § 5.01(a)(1), 2009 Tex. Gen. Laws 153, 205.

[52]*Castro*, 186 S.W.3d at 678.

[53]*Martin K. Eby Constr. Co., Inc., v. LAN/STV* (*Eby I*), 205 S.W.3d 16 (Tex. App.—Dallas 2006, pet. denied).

[54]*Id.*  In 2009, the legislature repealed article 6550d and adopted section 452.0561.  *See* Act of May 11, 2009, 81st Leg., R.S., ch. 85, § 2.05, 2009 Tex. Gen. Laws 153, 197.

[55]*Eby I*, 205 S.W.3d at 20.

[56]*Id.* at 20–21.

In *Reunion Hotel/Tower Joint Venture*,[57] the Dallas court stated that under section 452.056, DART had the authority to construct and operate a transportation system. The court held that because DART would not have been liable for the property damage at issue in the case, then, under section 452.056, neither was DART's independent contractor.[58] This opinion was distinguished by the Dallas court in the appeal after remand in the *Eby* case.[59] In *Eby II*, the court declined to revisit its prior holding in *Eby I* that section 452.056 did not give LAN/STV immunity.[60]

Finally, the Houston Fourteenth Court of Appeals discussed the section in 2014 in *Belehu v. Lawniczak*.[61] *Lawniczak* involved the Metropolitan Transit Authority of Harris County, which had a contract with a private corporation to provide drivers for Metro buses.[62] After a bus driven by such a driver struck and killed someone, the administrator of the decedent's estate sued the driver.[63] The

---

[57] *Reunion Hotel/Tower Joint Venture v. Dallas Area Rapid Transit*, 250 S.W.3d 203, 206 (Tex. App.—Dallas 2008, no pet.).

[58] *Id.*

[59] *Martin K. Eby Const. Co. v. LAN/STV* (*Eby II*), 350 S.W.3d 675 (Tex. App.—Dallas 2011), *rev'd sub nom on other grounds, LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234 (Tex. 2014).

[60] *Id.* at 685.

[61] 437 S.W.3d 913 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

[62] *Id.* at 913.

[63] *Id.* at 913–14.

driver argued in a summary judgment motion that as an employee of an independent contractor under section 452.056(d), he himself should be considered an independent contractor for purposes of that section.[64] He also argued that he should be considered an employee of a governmental unit under TTCA section 101.106.[65] The Fourteenth Court of Appeals did not reach the substance of the driver's argument, holding instead that the driver had failed to provide summary judgment evidence that the Metro was a transportation authority under chapter 452.[66] In summary, none of these cases provide express support for the transit defendants' position regarding the liability caps among multiple defendants.

Under the TTCA, no matter how many parts of a particular government unit a plaintiff sues, that unit cannot be held liable for an amount in excess of the cap for that unit.[67] On the other hand, when a plaintiff sues multiple entities, each with liability limited by the TTCA, the plaintiff may recover separately from each defendant up to the amount of the cap that applies to each respective entity.[68]

---

[64]*Id.* at 914.

[65]*Id.*

[66]*Id.* at 916.

[67]*See, e.g., Crossland*, 781 S.W.2d at 430 (observing that the trial court had treated the Texas Parks and Wildlife Department and the Texas Department of Highways and Public Transportation, both defendants in the case, as one governmental unit—the State of Texas).

[68]*See, e.g.*, *id.* at 438.

We agree with the transit defendants that, under their summary judgment evidence, FWTA is a regional transportation authority, and that, because Rodriguez's claims arise out of the death of one person, its liability under the TTCA is capped at $100,000.[69] Under transportation code section 452.056(d) and the cases cited above, for claims arising out of their performance of a function of FWTA, MTI and MTA each have liability capped at $100,000 per person.[70]

Rodriguez alleged that MTI and MTA contracted to manage and operate FWTA's public transportation system, and the transit defendants' summary judgment evidence supports this assertion. Thus, Rodriguez's claims against MTI and MTA appear to be based on those entities' performance of a function of FWTA. Accordingly, MTI's liability would be capped under the TTCA at $100,000, as would MTA's liability. Rodriguez's potential damages under the TTCA are limited to $300,000, and she may recover up to that amount, assuming of course that she can establish the liability of each entity and the damages caused by each.

In their brief, the transit defendants argue that this interpretation of the applicable statutes expands the tort liability of regional transportation systems.

---

[69] See Tex. Civ. Prac. & Rem. Code Ann. § 101.023(b).

[70] See Tex. Transp. Code Ann. § 452.056(d); Eby I, 205 S.W.3d at 20 (deciding whether the contractor had immunity from liability based on an analysis of the function it performed and not based on the characterization of the plaintiff's claim).

21

But even under our reading of the applicable statutes, FWTA is not liable for more than $100,000 no matter how many defendants Rodriguez successfully sues in this wrongful death action. And without the language in section 452.056(d), there would be no limitation to the amount that Rodriguez could recover against MTI and MTA. The section, however, caps their liability. This reading does not expand the tort liability of regional transportation systems.

The transit defendants further argue that Rodriguez does not address the contract among the transit defendants that invoked the transportation code and the TTCA. They say that "Rodriguez's argument runs afoul not only of the statute, but it also contravenes the portions of the agreement between the parties which adopt the tort liability protections authorized by the Legislature." Our holding is consistent with the language in the agreement, which adopts the language of the transportation code and recognizes the liability limit of MTI and MTA under the transportation code. We decline to read the transportation code as giving a regional transportation authority to confer onto a private contractor more limited liability than the legislature has provided.

Next the transit defendants assert that the legislature's use of the word "only" in the phrase "only to the extent" in section 452.056 means that damage caps cannot be stacked to recover up to $100,000 each from a regional transportation entity and its independent contractors. They argue that this court rejected stacking in *Crossland*.

22

The transit defendants assert that in *Crossland*, the Department of Highways and the Parks Department "were distinct governmental units performing independent governmental functions," and this court capped their combined liability at $100,000. But those entities were *not* "distinct governmental units" for purposes of liability limits; they were both departments of the State of Texas, and a judgment against either would be a judgment against the State.[71] Thus, the combined damages against those two departments could not exceed the liability cap applicable to the State.[72] As we stated above, we did not hold in *Crossland* that a plaintiff may not recover more than $100,000 in a suit against multiple entities with liability limits under the TTCA, no matter how many governmental entities are defendants. And in this case, a judgment against MTI or MTA is not a judgment against FWTA. *Crossland* does not help the transit defendants.

Because we have held that the $100,000 cap applies to MTI and to MTA, even if Rodriguez prevails on her claims against them, neither will be liable for more than that amount. And assuming that Rodriguez establishes the liability of each entity, the most that she may recover from all three defendants in total is $300,000.

---

[71] *Crossland*, 781 S.W.2d at 438 (stating that under the jury's verdict, "the State of Texas was liable for $297,250 (45% for Parks and Wildlife Department plus 30% for the Highway Department)").

[72] *See id.* (holding that the State's liability was capped at $100,000).

The transit defendants also repeat arguments from their summary judgment motion that "[i]t is hard to fathom that the Legislature intended unlimited liability of regional transportation authorities based upon the number of independent contractors that are necessary to execute its governmental functions" and that Rodriguez's proposed construction of the relevant statutes "fails in any way to shield the public from unlimited exposure."

The Supreme Court of Texas stated in *Brown & Gay* that "[s]overeign immunity has never been defended as a mechanism to avoid any and all increases in public expenditures."[73] The doctrine "was designed to guard against the 'unforeseen expenditures' associated with the government's defending lawsuits and paying judgments 'that could hamper government functions' by diverting funds from their allocated purposes."[74] The court stated that "[i]mmunizing a private contractor in no way furthers this rationale," and "private companies can and do manage their risk exposure by obtaining insurance."[75]

Further, regardless of the consideration that the legislature may have given to the number of independent contractors FWTA would need to execute its functions, this argument does not address the issues in this case. Under the construction we have applied, FWTA, MTI, and MTA will not be subject to

---

[73] *Brown & Gay*, 461 S.W.3d at 123.

[74] *Id.*

[75] *Id.*

24

unlimited liability, given that a statutory cap on liability applies to them. Our reading of the statutes at issue does not subject regional transportation authorities or their independent contractors to unlimited exposure.

We sustain this part of Rodriguez's first issue.

*Vaughn's Employment Status*

In the part of the transit defendants' summary judgment motion addressing the claims against Vaughn, Vaughn asserted several arguments for why she should be treated as the employee of a governmental unit and therefore dismissed under the election of remedies provision of TTCA section 101.106. First, she distinguished *Castro*, arguing that *Castro* construed the former version of section 101.106, and that, since then, the legislature had completely rewritten that section and had greatly enhanced the protection of employees performing governmental functions.

The part of *Castro* to which Vaugh refers is its holding that the caps in the TTCA on government liability "are not transmitted to the 'employees' of the governmental unit or the 'employees' of the independent contractor."[76] The court noted that governmental employees were not left unprotected because, under the then-effective version of section 101.106, "'[a] judgment in an action or a settlement of a claim under [the TTCA] bars any action involving the same

---

[76]*Castro*, 186 S.W.3d at 678.

25

subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim.'"[77]

The court considered "[p]ivotal" the fact that "the employees of independent contractors are not included in former section 101.106, and they are specifically excluded from the definition of an 'employee' under the [TTCA]."[78] The court held that, "[a]ccordingly, the statutory framework providing the 'damage caps' and the 'bar' does not include the employees of independent contractors of governmental units."[79]

Vaughn stated in her summary judgment motion that the former version of section 101.106 applied only after a judgment or settlement had been reached with a governmental entity. "In essence, that was the limited holding of *Castro*; namely, [the former version of section 101.106] did not apply to protect the driver in that case because no prior judgment or settlement existed." And, she argued, placed in this context, *Castro* was not dispositive of Vaughn's fate in this case. Thus, *Castro* was limited "to being a historical anachronism."

Vaughn further argued that *Castro* was "plainly wrong" when it concluded there was no language in the transportation code supporting the bus driver's claim of derivative governmental immunity. She pointed to section 452.056(d),

---

[77] *Id.*

[78] *Id.*

[79] *Id.*

26

stating that the legislature's use of the word "except" in that subsection "is a statement of legislative intent." She argues, "[t]he only reason the word 'except' is in the statute is to activate the Legislature's desire to treat 'independent contractors' under the statute as 'public entities' for the purpose of tort claim limits."

Finally, Vaughn asserted that the Supreme Court of Texas's *Franka v. Velasquez*[80] is a "sweeping decision embracing the concept of derivative sovereign immunity." She stated that *Franka* holds that a court may look to statutes outside the TTCA to determine if an employee can be considered a government employee for purposes of TTCA section 101.106. The trial court in this case agreed with Vaughn, and it granted summary judgment for Vaughn and dismissed Rodriguez's claims against her.

In Rodriguez's brief, she argues that Vaughn was not entitled to have her claims dismissed under section 101.106 because there is no dispute that Vaughn was, at all material times, the employee of a private contractor of FWTA, and her liability was therefore not capped. She counters Vaughn's characterization of *Castro* by stating that the actual basis for the court's conclusion in *Castro* is "explicitly clear"—that employees of independent contractors are not included in section 101.106. She states that the *Castro* court specifically said that its holding did not depend on whether the transit authority had first been found liable.

---

[80]332 S.W.3d 367 (Tex. 2011).

Rodriguez further argues that, as amended, section 101.106 still applies to only employees of governmental units, and the TTCA's definition of "employee" still does not include an independent contractor's employee. She states that *Franka* does not support Vaughn's point about looking outside the TTCA to determine whether a person is a governmental entity's employee because, unlike the extra-TTCA statute relied on by Vaughn, the statute in *Franka* specifically set out when the category of employee to which the defendant belonged would be considered an employee of a state agency for purposes of determining liability.

We agree with Rodriguez. As noted by the transit defendants, in *Castro*, the court construed the prior version of the TTCA section 101.106. However, *Castro*'s analysis was unaffected by the statute's amendment. The opinion's holdings depend on the same statutory provisions that we rely on—transportation code section 452.046(d) and the definition of "employee" in the TTCA.[81] Under the version of the TTCA applicable to Rodriguez's claims, section 101.106 applies to employees of a governmental unit, and the definition of "employee" under the chapter specifically excludes the employees of independent contractors,[82] just like in *Castro*. Accordingly, Vaughn is not an employee of a governmental unit, and section 101.106 does not apply to her.

---

[81] *Castro*, 186 S.W.3d at 678–79.

[82] Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a), (e), (f); *see also id.* § 101.001(2) (defining "employee").

28

The word "except" in transportation code section 452.056(d) does not alter our determination that Vaughn is not a governmental unit's employee under the TTCA. The statute does not state that a transportation authority's private contractor is not a public entity unless it performs a function of the authority. It states that an independent contractor is not a public entity, except that such an entity is liable for damages to the extent that the authority would be liable if it were performing the function.[83] In other words, a contractor of a transportation authority is not a public entity, but whatever limits of liability apply to a transit authority, those same limits apply to an independent contractor when that contractor performs the functions of the authority.

To see the statutes in the proper light, we note that governmental units have immunity from suit and liability, except to the extent that immunity is waived.[84] The TTCA is a limited waiver of that immunity, in that it waives immunity from suit for some claims and immunity from liability up to a certain amount. On the other hand, independent contractors of governmental units do *not* have immunity from suit *or* from liability, except to the extent that immunity is conferred upon them by the legislature. Transportation code section 452.056(d) is a limited conferment of immunity from liability, such that independent contractors have no more immunity than the regional transportation authority with

---

[83]Tex. Transp. Code Ann. § 452.056(d).

[84]*Rusk State Hosp. v. Black*, 392 S.W.3d 88, 93 (Tex. 2012).

which they have contracted would have to the extent they perform a function of that authority.[85] Dictating that courts treat an entity the same way for liability purposes that a governmental unit would be treated is not the same as making an entity itself a governmental unit, such that its employees are employees of a governmental unit.

Further support for our reading of the relevant statutes comes from the TTCA's unambiguous instruction that the employee of a governmental unit's contractor is *not* an employee of a government unit.[86] If an authority's contractor were a governmental unit, then its employee would be the employee of a governmental unit.

We also agree with Rodriguez that *Franka* is of no help to Vaughn. In that case, as Vaughn said, the court looked at a statute outside of the TTCA to see if the employee in question was an employee of a governmental unit for purposes of section 101.106.[87] The employee in the case was a medical resident employed by one governmental unit and paid by a different governmental unit.[88] The statute outside the TTCA that the court looked to was a provision in the

---

[85]*Cf. Eby 1*, 205 S.W.3d at 20 (rejecting the defendant contractor's interpretation of the transportation code, which would have placed the contractor in a better position than the authority with which it had contracted).

[86]Tex. Civ. Prac. & Rem. Code Ann. § 101.001(2).

[87]*Franka*, 332 S.W.3d at 374.

[88]*Id.* at 373.

health and safety code that explicitly provided that a medical unit or supported medical school *is* a state agency, and further provided that a resident of a medical unit or supported medical school "*is an employee of a state agency* for purposes of . . . determining the liability, if any, of the person for the person's acts or omissions while engaged in the coordinated or cooperative activities of the unit."[89]

Transportation code section 452.056(d), on the other hand, does not make an independent contractor's employee the employee of a governmental unit. It does not mention employees at all. That section therefore does not override the provisions of the TTCA that exclude independent contractors' employees from the definition of "employee" under the TTCA. And the statute at issue in *Franka* supports our decision because it shows that the legislature knows how to designate an entity as a governmental unit and to designate an employee as an employee of a governmental unit for purposes of liability. Vaughn did not show her entitlement to judgment as a matter of law on the ground that the claims against her should be dismissed under TTCA section 101.106.

We sustain the second part of Rodriguez's first issue. Having done so, we do not consider her alternative argument under the open courts provision of the Texas Constitution.[90]

---

[89]*Id.* at 373–74 (quoting Tex. Health & Safety Code Ann. § 312.007(a) (West 2010)).

[90]*See* Tex. Const. art. I, § 13.

## 2. The denial of Rodriguez's motion for summary judgment

In Rodriguez's second issue, she argues that the trial court erred by denying her motion for partial summary judgment. In her motion, Rodriguez included as summary judgment grounds that the TTCA's liability limits apply separately to each defendant and that liability against Vaughn is not capped. On appeal, Rodriguez asserts that the trial court erred by not granting partial summary judgment on these grounds. She asks this court to render a partial judgment making those two declarations and also declaring that she is entitled to recover the $100,000 tendered by MTI in satisfaction only of MTI's liability to her and that she have and recover judgment from MTI in that amount. Given our disposition of Rodriguez's first issue, we sustain her second issue as to the questions of liability caps and Vaughn's potential liability.

As for the second part of this issue, the record does not indicate that Rodriguez is entitled to the relief she requests. In Rodriguez's petition, she alleged that the transit defendants had waived any right to relief under the interpleader action and that their interpleader action was barred by limitations. In her motion for summary judgment, Rodriguez asserted that MTI had not unconditionally tendered funds into the registry of the court, that, as a matter of law, it was not an innocent, disinterested stakeholder, and that MTI's interpleader claims were barred by limitations. She further sought a no-evidence summary judgment on MTI's claim for interpleader. But she also asserted that because MTI had acknowledged and admitted its liability of $100,000, she was entitled to

32

have that amount awarded to her. Because the trial court granted the interpleader, she essentially asks us to affirm that part of the trial court's judgment against MTI.

While MTI did not contest liability in its initial interpleader petition, in the amended petition adding the other transit defendants, the transit defendants took a different position. They asserted that Rodriguez's claims were defensible, but if the trial court accepted the interpleader and dismissed all of the claims against them, they would choose not to put up a defense. In essence, the transit defendants made a settlement offer. That is, their willingness to pay $100,000 without a trial on liability or damages was contingent on the trial court accepting their terms—that among them they would pay no more than $100,000 total, and that, upon that payment, the claims against all of the transit defendants would be dismissed. Setting aside the question of whether the nature of MTI's attempted interpleader met the requirements for an interpleader—an issue contested in the trial court—the conditions for the transit defendants' offer have not been met.

The trial court's judgment accepting the interpleader was based on the trial court's acceptance of the transit defendant's position that the caps cannot be stacked and that Vaughn and the other transit defendants were entitled to be dismissed from the suit. Rodriguez has not accepted those terms, and we have agreed with her that under the law she is not limited to $100,000 total. We cannot render judgment as requested by Rodriguez because we reversed the judgment of interpleader and the liability of MTI has not been established. We do

33

not address whether interpleader is available to the transit defendants.[91] Rodriguez did not raise it as an issue on appeal, and such a holding is not necessary to our disposition. We overrule this part of Rodriguez's second issue.

### 3. The denial of trial and appellate fees for the transit defendants

In the transit defendants' cross-issue, they argue that a trial court may not ignore expert evidence of reasonable and necessary attorney's fees and award $0 in trial and appellate fees after properly granting an interpleader. In its findings of fact and conclusions of law, the trial court concluded that the transit defendants had failed to segregate their fees. The court further concluded that although the transit defendants were required to put on evidence to support their billing under the lodestar method, they had not done so.[92]

---

[91] *See* Tex. R. Civ. P. 43 (providing the right of interpleader when a person is or may be exposed to double or multiple liability); Tex. Lab. Code Ann. § 417.001 (providing for subrogation); *Franks*, 936 S.W.2d at 960–61 (construing section 417.001 and its predecessor and stating that between the injured employee and the worker's compensation carrier, there is but one claim belonging to the employee, and that a carrier may recover for benefits it has paid, but damages recovered over that amount belong to the employee). *See also Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 33 (Tex. 2008) ("For decades, Texas law has required the first money recovered by an injured worker from a tortfeasor to go to the worker's compensation carrier, and until the carrier 'is paid in full the employee or his representatives have no right to any funds.'" (citations omitted)).

[92] *See Enzo Invs., LP v. White*, 468 S.W.3d 635, 653 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ("Here, White chose to use the lodestar method to establish the amount of reasonable and necessary attorney's fees attributable to the successful prosecution of his breach-of-contract claim against Enzo; thus, he was required to provide evidence of the time expended on specific tasks.").

Though Rodriguez did not challenge the availability of interpleader in her appeal, in the transit defendants' cross-appeal, she challenges their entitlement to attorney's fees. She argues that the transit defendants did not establish that they are innocent, disinterested stakeholders,[93] did not unconditionally tender the interpleader fund into the registry of the trial court,[94] were not exposed to double or multiple liability,[95] unreasonably delayed filing the interpleader action,[96] and presented insufficient evidence to require any award of attorney's fees.[97] She further argues that MTI voluntarily attempted to subject itself to double or multiple

---

[93] *See United States v. Ray Thomas Gravel Co.*, 380 S.W.2d 576, 580–81 (Tex. 1964) (discussing when an interpleading party is entitled to attorney's fees and using the terms "innocent stakeholder" and "disinterested stakeholder"); *Kelsey v. Corbett*, 396 S.W.2d 440, 442 (Tex. Civ. App.—El Paso 1965, writ ref'd n.r.e.) ("We see no basis for such allowance of attorney's fees [for the Tax Assessor-Collector], since the Tax Assessor-Collector was not in the true position of a stakeholder but was, in fact, a party defendant").

[94] *See Hanzel v. Herring*, 80 S.W.3d 167, 173 (Tex. App.—Fort Worth 2002, no pet.) (stating that the elements of an interpleader action include that "the party has unconditionally tendered the fund or property into the court's registry").

[95] *See Taliaferro v. Tex. Commerce Bank*, 660 S.W.2d 151, 153 (Tex. App.—Fort Worth 1983, no writ) ("An interpleader suit is authorized by Rule 43 . . . when a stakeholder 'is or may be exposed to double or multiple liability.'").

[96] *See Hanzel*, 80 S.W.3d at 173 (stating that the elements of an interpleader action include that "the party has not unreasonably delayed filing an action for interpleader").

[97] *See Enzo Invs.*, 468 S.W.3d at 653.

liability by intervening as a defendant in Insurance's suit.[98]  Insurance similarly

argues that the transit defendants were not entitled to attorney's fees because

they were required but failed to segregate their fees, that they failed to present

proper evidence to support an award of attorney's fees, and that they are the

negligent parties or responsible for the conduct of a negligent party that caused

the damages sought by Rodriguez and Insurance.[99]

As we have said, the transit defendants offered the $100,000 on the

condition that the trial court find that liability against them was capped and that

Vaughn was an employee of a governmental unit entitled to dismissal.  The trial

court granted summary judgment on those bases, and we have held that the trial

court erred by doing so.  Because we have reversed the trial court's summary

judgment granting the interpleader, we cannot say that the trial court abused its

discretion by denying the requested trial and appellate attorney's fees for the

transit defendants.

Further, the trial court was correct that the transit defendants did not

provide sufficient evidence of the work they had done up to that point to support

their requested fees.  The Supreme Court of Texas has held that "generalities

about tasks performed provide insufficient information for the fact finder to

---

[98]*Brown v. Getty Reserve Oil, Inc.*, 626 S.W.2d 810, 815 (Tex. App.—Amarillo 1981, writ dism'd) ("When an interpleading party is responsible for the conflicting claims to the funds, the party is not entitled to attorneys' fees incurred in interpleading the claimants.").

[99]*See id.*

meaningfully review whether the tasks and hours were reasonable and necessary under the lodestar method."[100] An attorney requesting fees under the lodestar method is not required to introduce his time sheets or billing records.[101] But what is required is, "at a minimum, evidence 'of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required.'"[102] An attorney's evidence of fees is insufficient if the attorney fails to provide evidence of the time devoted to specific tasks.[103]

At the hearing on attorney's fees, one of the transit defendants' attorneys was asked if he was basing his fee request on the lodestar method. He answered, "I assume so." Insurance's attorney then asked him a series of questions about what specific tasks he had worked on and how long those tasks had taken.

First Insurance's attorney asked the transit defendants' attorney about the time he had spent preparing the interpleader.

Q. How long did that take?

A. How long did what take?

Q. Preparing the interpleader.

---

[100] *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014).

[101] *See id.*

[102] *Id.* (quoting *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 764 (Tex. 2012)).

[103] *Id.* (citing *City of Laredo v. Montano*, 414 S.W.3d 731, 736–37 (Tex. 2013).

37

A. The pleading itself?  I don't have the bill in front of me, but—

Q. You don't [know] how long that task took?

A. Well, it took a number of hours to research the applicability of the impleader and to put the pleading together.

Q. But you can't give me a specific number as we sit here today?

A. I don't have it in front of me, no.

The rest of the attorney's testimony was similar.  When asked about what other tasks the attorney took before Insurance nonsuited its claims, the attorney testified that he made phone calls and sent letters to Rodriguez's attorney.  That attorney could not say how many phone calls because he did not have his bill in front of him.  He could not answer how many hours he spent on Insurance's suit between the filing of the interpleader and Insurance's dismissal because "[he] [did not] have [his] bills in front of [him]."  The transit defendants' other attorney also testified, but his testimony was no more specific than that of the first attorney.  No other evidence in the record before the trial court provided evidence of the time spent on specific tasks.

This case illustrates the Supreme Court of Texas's statements in *El Apple* that while time records or billing statements are not required to establish a lodestar fee, "in all but the simplest cases, the attorney would probably have to refer to some type of record or documentation to provide" the information required to establish a lodestar fee.[104]  The trial court did not abuse its discretion

---

[104] *El Apple*, 370 S.W.3d at 763.

by not awarding attorney's fees to the transit defendants. We overrule the transit defendants' sole issue.

## C. Conclusion

Having overruled the transit defendants' sole issue, and having sustained Rodriguez's first issue and her second issue in part, we reverse the trial court's judgment. We render declaratory judgment that the tort-liability limits applicable to FWTA, MTA, and MTI apply separately to each defendant and that the potential tort liability of Vaughn is not capped under the TTCA. We remand this case for further proceedings.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, WALKER, and MEIER, JJ.

WALKER, J. and MEIER, J., concur without opinion.

DELIVERED: June 23, 2016

39